[ORAL ARGUMENT NOT YET SCHEDULED]
No. 12-1463

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

BROADCASTING BOARD OF GOVERNORS
OFFICE OF CUBA BROADCASTING,
Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY,
Respondent,
and
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
LOCAL 1812,
Intervenor.

_____

ON PETITION FOR REVIEW OF THE DECISION AND ORDER
OF THE FEDERAL LABOR RELATIONS AUTHORITY

_____

INITIAL OPENING BRIEF FOR THE PETITIONER
_____

STUART F. DELERY
*Assistant Attorney General*

LEONARD SCHAITMAN
 202-514-3441
HOWARD S. SCHER
 202-514-4814
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7239*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, NW*
 *Washington, DC  20530-0001*

## Certificate as to Parties, Rulings, and Related Cases

A.    <u>Parties</u>.

  1.  Petitioner:

The petitioner is the Broadcasting Board of Governors Office of Cuba

Broadcasting, one of the parties in the grievance proceeding below.  The other

party to the proceeding was the American Federation of Government

Employees Local 1812.

  2.  Respondent:

The respondent is the Federal Labor Relations Authority.

  3.  Amici and Intervenors:  None below.

B.    <u>Ruling under Review</u>.

The ruling at issue on appeal is the Decision of the Federal Labor Relations

Authority in *Broadcasting Board of Governors Office of Cuba Broadcasting*

*(Agency) and American Federation of Government Employees Local 1812*

*(Union)*, 66 FLRA No. 182, Case No. 0-AR-4800, issued September 25, 2012.

C.     Related Cases.

This case has not previously been before this Court.  However, early in these appellate proceedings (on January 3, 2013), the Federal Labor Relations Authority filed a motion to dismiss this case for lack of jurisdiction under 5 U.S.C. 7123.  The Court referred the question of the Court's jurisdiction to the merits panel and directed the parties to address that issue in their briefs.  See Order dated June 18, 2013.  Counsel for the petitioner is unaware of any cases pending before this Court or any other court that could be considered related.

/s/ Howard S. Scher
HOWARD S. SCHER
Attorney for the Petitioner

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS,
    AND RELATED CASES

GLOSSARY ................................................................................. viii

STATEMENT OF JURISDICTION AND STANDING ......................................... 1

STATEMENT OF THE ISSUES ........................................................... 2

STATUTE INVOLVED ..................................................................... 3

STATEMENT OF FACTS AND PROCEEDINGS BELOW ................................. 6

SUMMARY OF ARGUMENT ............................................................. 14

ARGUMENT ............................................................................. 18

       Standard of Review ....................................................... 18

    I.    THE BBG HAD NO DUTY TO BARGAIN OVER
        THE 2009 RIF BECAUSE THE SUBJECT OF RIFs
        WAS "COVERED BY" THE EXISTING
        COLLECTIVE BARGAINING AGREEMENT ................................ 19

         A.    The Authority's Failure to Address The
              "Covered By" Defense, At the Very Least,
              Requires a Remand ................................................. 19

         B.    Application Of The "Covered By" Defense
              Requires Reversal ................................................... 23

    II.   THE AGENCY DID NOT VIOLATE ARTICLE 30
        § 4 BY FAILING TO CONSIDER EXCEPTED-SERVICE
        EMPLOYEES FOR COMPETITIVE-SERVICE POSITIONS ......... 36

i

III.   THE COURT HAS JURISDICTION
OVER THE PETITION FOR REVIEW ............................................ 39

CONCLUSION .................................................................................................... 43

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM:  Pertinent Statutory Provisions

# TABLE OF AUTHORITIES

<u>Cases</u>:

*AFGE v. FLRA*, 712 F.2d 640 (D.C.Cir.1983) ................................................... 4-5

\*AFGE v. FLRA*, 778 F.2d 850 (D.C.Cir.1985) .............................................. 38, 42

*AFGE Local 32 v. FLRA*, 110 F.3d 810 (D.C. Cir. 1997) ....................................38

*AFGE Local 2510 v. FLRA*, 453 F.3d 500 (D.C.Cir.2006) ..................................42

*AFGE Local 2741 v. FLRA*, 866 F.2d 1443 (D.C. Cir.) ........................................31

\*AFGE Local 2924 v. FLRA*, 470 F.3d 375 (D.C. Cir. 2006) ........................... 30-31

*AFGE Local 3937 and SSA*, 64 FLRA 17 (2009)................................................32

*American Ship Bldg. Co. v. NLRB*, 380 U.S. 300 (1965) ....................................18

*Association of Civilian Technicians, N.Y. State*
   *Council v. FLRA*, 507 F.3d 697 (D.C. Cir. 2007).........................................42

*BATF v. FLRA*, 464 U.S. 89 (1983)....................................................................18

*Broadcasting Board of Governors and AFGE Local 1812*,
  66 FLRA 380 (2011)........................................................................... 6-7

*Council of Prison Locals v. Brewer*, 735 F.2d 1497
   (D.C.Cir.1984) ...................................................................................4

\*Dept. of Navy, Marine Corps Logistics Base, Barstow v.*
   *FLRA*, 962 F.2d 48 (D.C. Cir. 1992) ........................................... 5, 19, 20, 27

_____

*\*Authorities chiefly relied upon are marked with an asterisk (\*).*

iii

*Dept. of Treasury, IRS and NTEU, Chapter 19,*
   62 FLRA 411 (2008)........................................................................31

*Dept. of Treasury, U.S. Customs v. FLRA,* 762 F.2d 1119
   (D.C. Cir. 1985) ...........................................................................35

*DHS Customs and Border Patrol,* 59 FLRA 910 (2004) ............................ 31, 33

*DHS Customs and Border Patrol,* 67 FLRA 46 (2012) ........................................31

*Equal Employment Opportunity Commission,*
   52 FLRA 459 (1996)........................................................................5

*FAA v. FLRA,* 145 F.3d 1425 (D.C. Cir. 1998) .....................................35

*\*Federal Bureau of Prisons v. FLRA,* 654 F.3d 91
   (D.C. Cir. 2012) ...........................................5, 19-20, 21, 24-27

*FLRA v. Aberdeen Proving Ground,* 485 U.S. 409 (1988)..................................18

*Internal Revenue Serv. & NTEU,* 29 FLRA 162 (1987)........................................41

*IRS v. FLRA,* 963 F.2d 429 (D.C. Cir.1992)........................................20

*Metropolitan Edison Co. v. NLRB,* 460 U.S. 693 (1983) .....................................32

*NAAE v. FLRA,* 473 F.3d 983 (9th Cir. 2007) .....................................18

*NAGE, Local R3-32,* 61 FLRA 127 (2005) ...........................................31

*Nat'l Guard Bureau and Association of Civilian,*
   Tech., 57 FLRA 240 (2001)............................................................ 29-30

*NFFE Local 2015,* 53 FLRA 967 (1997) ...........................................39

*NRC v. FLRA,* 895 F.2d 152 (4th Cir. 1990) ...........................................4

*NTEU v. FLRA,* 810 F.2d 295 (D.C.Cir.1987) .....................................41

iv

*NTEU v. FLRA,* 848 F.2d 1272 (D.C. Cir. 1988) .................................................... 4

*\*NTEU v. FLRA*, 399 F.3d 334 (D.C. Cir. 2005) ................................. 18, 27, 31, 41

*NTEU v. FLRA*, 414 F.3d 50 (D.C. Cir. 2005) .......................................................18

*\*NTEU v. FLRA*, 452 F.3d 793 (D.C. Cir. 2006) .......................... 18, 19, 21, 24, 41

*Overseas Education Ass'n v. FLRA*, 824 F.2d 61
    (D.C. Cir. 1987) ...........................................................................................40

*Pope v. Federal Communications Commission*,
    311 F.3d 1379 (Fed. Cir. 2002) ...................................................................37

*\*Sacramento Air Force Logistics Center McClellan Air Force*
    *Base, California*, 47 FLRA 1249 (1993) ....................................5-6, 21-22, 24

*\*Social Security Administration*, 47 FLRA 1004 (1993) ...................... 5, 19, 20, 27

*SSA Mid-America Service Center*, 9 FLRA 229 (1982) ................................. 31, 33

*U.S. Dept. of Air Force v. FLRA*, 648 F.3d 841
    (D.C. Cir. 2011) ...........................................................................................38

*\*U.S. Dept. of Air Force v. FLRA*, 680 F.3d 826
    (D.C. Cir. 2012) ........................................................................................2, 43

*\*U.S. Dept. of Commerce v. FLRA*, 672 F.3d 1095
    (D.C. Cir. 2012) ...........................................................................................35

*U.S. Dept. of Interior Minerals Management Service,*
    *New Orleans, La. v. FLRA*, 969 F.2d 1158
    (D.C. Cir. 1992) .............................................................................................4

*U.S. Dept. of Labor, Wash., D.C.,* 60 FLRA 68  (2004) ...........................................27

*U.S. Dept. of the Navy v. FLRA*,
    665 F.3d 1339 (D.C. Cir. 2012) ................................................................2, 40

*U.S. Dept. of Transp., FAA v. FLRA*, 145 F.3d 1425
(D.C. Cir. 1998) ........................................................................ 38

*U.S. Marshals Service v. FLRA*, 708 F.2d 1417
(9th Cir. 1983) ......................................................................... 40

*Veterans Administration and Veterans Administration Medical
Center, Lyon*, 24 FLRA 505 (1986) ......................................... 31

*Wright v. Universal Martime Service Corp.*,
525 U.S. 70 (1998) ................................................................ 31-32

## Statutes:

5 U.S.C. 706(2)(A) ......................................................................... 18

5 U.S.C. 7101 et seq., ...................................................................... 3

5 U.S.C. 7104 ................................................................................... 3

5 U.S.C. 7105 ................................................................................... 3
5 U.S.C. 7105(a)(2)(E) ..................................................................... 5

*5 U.S.C. 7106 ............................................................................... 29
5 U.S.C. 7106(a) ...................................................................... 4, 26
5 U.S.C. 7106(b)(1) ......................................................................... 4
*5 U.S.C. 7106(b)(2) ................................................................. 4, 26
*5 U.S.C. 7106(b)(3) ................................................................. 4, 26

5 U.S.C. 7113 ................................................................................. 29

5 U.S.C. 7114(a)(1) .......................................................................... 3
5 U.S.C. 7114(a)(4) ..................................................................... 3, 41
5 U.S.C. 7114(b) .............................................................................. 3
5 U.S.C. 7114(c)(1) .......................................................................... 5
5 U.S.C. 7114(c)(2) .......................................................................... 5

5 U.S.C. 7116 ................................................................................... 3
*5 U.S.C. 7116(a)(5) .................................................. 8, 29-30, 40

*5 U.S.C. 7116(a)(8) .......................................................................8, 40

 5 U.S.C. 7116(d) ............................................................................ 6

 5 U.S.C. 7116(e)(5) .........................................................................3

*5 U.S.C. 7117(a)(1) ......................................... 4, 17, 37, 38, 42

 5 U.S.C. 7117(d)(2) .......................................................................29

 5 U.S.C. 7118 .............................................................................. 6

 5 U.S.C. 7119(c)(5)(B) (1982) .......................................................4

 5 U.S.C. 7122 ........................................................................ 6, 39

*5 U.S.C. 7123(a) ......................................... 2, 5, 6, 17, 39-40, 42

*5 U.S.C. 7123(a)(1) ......................................... 2, 6, 32, 40

*5 U.S.C. 7123(c) .........................................................................18

 22 U.S.C. 1465(4) .........................................................................7

 22 U.S.C. 1465b ............................................................................7

 Foreign Affairs Reform and Restructuring Act of 1998,
    Pub. L. No. 105-277, §§1301 *et seq.*,
    112 Stat. 2681 (effective October 1, 1999) ...................................8

## **Regulations:**

 5 C.F.R. Part 351 ................................................................... 23, 38

 5 C.F.R. 351.201(a)(2) ........................................................... 11, 23

 5 C.F.R. 351.705(b)(5) ...................................................................31

 5 C.F.R. 2471.11 ............................................................................4

## Glossary

| | |
|---|---|
| AFGE | American Federation of Government Employees Local 1812 |
| Agency | Broadcasting Board of Governors Office of Cuba Broadcasting |
| Authority | Federal Labor Relations Authority |
| BBG | Broadcasting Board of Governors |
| CBA | Collective Bargaining Agreement |
| FLRA | Federal Labor Relations Authority |
| FSLMRS | Federal Service Labor Management Relations Statute |
| I&I bargaining | Impact and implementation bargaining |
| OCB | Office of Cuba Broadcasting |
| OPM | Office of Personnel Management |
| RIF | Reduction-in-force |
| ULP | Unfair labor practice |
| Union | American Federation of Government Employees Local 1812 |
| USIA | U.S. Information Agency |

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 12-1463

———————————————

BROADCASTING BOARD OF GOVERNORS
OFFICE OF CUBA BROADCASTING,

Petitioner,
v.

FEDERAL LABOR RELATIONS AUTHORITY,

Respondent.

and

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
LOCAL 1812,

Intervenor.

———————————————

ON PETITION FOR REVIEW OF THE DECISION AND ORDER
OF THE FEDERAL LABOR RELATIONS AUTHORITY

———————————————

INITIAL OPENING BRIEF FOR THE PETITIONER

———————————————

## STATEMENT OF JURISDICTION AND STANDING

The decision and order of the Federal Labor Relations Authority (FLRA or

Authority) was issued September 25, 2012.  JA ___.  The petitioner – the

Broadcasting Board of Governors Office of Cuba Broadcasting (agency or BBG) –

filed a petition for review on November 20, 2012 (JA ___), which was timely under 5 U.S.C. 7123(a).  Petitioner has standing as an aggrieved party under 5 U.S.C. 7123(a).

The Court has jurisdiction to review a final order of the Authority involving an arbitral award if, as here, the Authority's order "involves an unfair labor practice," 5 U.S.C. 7123(a)(1) or "necessarily implicate[s]" one, *U.S. Dept. of the Navy v. FLRA*, 665 F.3d 1339, 1345 (D.C. Cir. 2012) (internal quotation marks omitted), or if it involves a question of sovereign immunity, see *U.S. Dept. of Air Force v. FLRA*, 680 F.3d 826, 830 (D.C. Cir. 2012).  Early in these appellate proceedings (on January 3, 2013), the Authority moved to dismiss this case for lack of jurisdiction under 5 U.S.C. 7123.  The Court referred that issue to the merits panel and directed the parties to address that issue in their briefs.  See Order dated June 18, 2013.  The issue of the Court's jurisdiction is fully addressed in Point III, *infra*, at pp. 40-43.

## STATEMENT OF THE ISSUES

1.  Whether the agency had no duty to bargain over implementation of the 2009 reduction-in-force (RIF) because the subject of RIFs was already "covered by" an existing article in the parties' collective bargaining agreement (CBA).

2.  Whether the Arbitrator erred in ruling that the BBG violated Article 30 § 4(e) because the agency failed to consider excepted-service employees for

competitive-service positions, a ruling that conflicts with government-wide regulations issued by the Office of Personnel Management (OPM).

3.  Whether the Court has jurisdiction to review the Authority's final order in this case.

## STATUTE INVOLVED

1.  The Federal Service Labor Management Relations Statute (FSLMRS or labor statute), Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. 7101 *et seq*., provides a general framework for regulating labor-management relations for the federal government.  The statute grants federal agency employees the right to organize, provides for collective bargaining, and defines what constitutes an unfair labor practice (ULP).  See Sections 7114(a)(1), 7116.  The Authority is responsible for implementing the FSLMRS through the exercise of broad adjudicatory, policy-making, and rulemaking powers.  Sections 7104, 7105.

The FSLMRS provides that the agency and labor organization "shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement."  Section 7114(a)(4).  The duty to negotiate in good faith includes, for example, the "obligation" to "meet at reasonable times" and "as frequently as may be necessary."  Section 7114(b).  Under the statute, it is an "unfair labor practice for an agency" to refuse to consult or negotiate in good faith with a labor organization as required by the FSLMRS.  Section 7116(e)(5).

3

A federal agency has a general duty to bargain in good faith only "to the extent not inconsistent with any Federal law or any Government-wide rule or regulation * * *," 5 U.S.C. 7117(a)(1), and "agencies are specifically prohibited from negotiating on certain matters contained in the 'management rights' clause of 5 U.S.C. § 7106(a)," which includes the agency's budget, mission, work assignments, discipline, and layoffs. *NRC v. FLRA,* 895 F.2d 152, 154 (4th Cir. 1990). Notwithstanding the management rights provision, management has an obligation to negotiate over the "procedures" and "appropriate arrangements for employees adversely affected" by management decisions under Section 7106(a) and (b)(1). Section 7106(b)(2) & (3).[1] See also, *e.g.*, *U.S. Dept. of Interior Minerals Management Service, New Orleans, La. v. FLRA*, 969 F.2d 1158, 1160 (D.C. Cir. 1992). And, to be negotiable, a proposal must be valid (or lawful) on its face because, if "deemed negotiable by the Authority," a proposal "may be imposed on a party by the Federal Service Impasses Panel if a bargaining impasse occurs." *NTEU v. FLRA*, 848 F.2d 1272, 1274 n.1 (D.C. Cir. 1988) (citing 5 U.S.C. 7119(c)(5)(B) (1982)); 5 C.F.R. 2471.11; *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 & n. 6 (D.C.Cir.1984); *AFGE v. FLRA*, 712 F.2d

---

[1] This is sometimes called "impact and implementation" or "I&I" bargaining.

4

640, 646 & n. 24 (D.C.Cir.1983)). Thus, an invalid proposal cannot be saved on the theory that negotiations might lead to a valid (lawful) contractual term.[2]

There is no duty to bargain over any matter – whether a "procedure," an "appropriate arrangement," or otherwise – during the term of a bargaining agreement if that matter is already "covered by" the parties' agreement. See *Social Security Administration*, 47 FLRA 1004, 1018-19 (1993). See also *Federal Bureau of Prisons v. FLRA*, 654 F.3d 91, 94 (D.C. Cir. 2012) ("If a collective bargaining agreement 'covers' a particular subject, then the parties to that agreement 'are absolved of any further duty to bargain about that matter during the term of the agreement.'") (citing *Dept. of Navy, Marine Corps Logistics Base, Barstow v. FLRA*, 962 F.2d 48 (D.C. Cir. 1992)); *Equal Employment Opportunity Commission*, 52 FLRA 459, 471-72 (1996) (if a matter is "covered by" an agreement, then an agency may act unilaterally without providing notice and the union, as party to the agreement, is presumed to be familiar with the terms of the agreement); *Sacramento*

---

[2] Under the statute, any "agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency." Section 7114(c)(1). The agency head has "30 days from the date the agreement is executed" to "approve" it. Section 7114(c)(2). If, "within the 30-day period," the agency head "does not approve or disapprove the agreement," it becomes the parties' binding agreement. *Ibid*. Determinations by agency negotiators or the agency head that provisions of a proposed collective bargaining agreement are nonnegotiable are subject to review by the Authority, see 5 U.S.C. 7105(a)(2)(E), and the decisions of the Authority are, in turn, subject to judicial review in the court of appeals, see 5 U.S.C. 7123(a).

*Air Force Logistics Center McClellan Air Force Base, California*, 47 FLRA 1249 (1993).

Finally, with exceptions not relevant here, where an issue can be raised either as a grievance under the contract or a ULP, the complainant must elect one or the other procedure.  Section 7116(d).  If a ULP charge is filed and adjudicated by the Authority, the courts have jurisdiction to review the Authority's decision under 5 U.S.C. 7123(a).  However, if the arbitration path is chosen and the Authority resolves exceptions to the Arbitrator's award, jurisdiction to review the Authority is foreclosed, except in cases where "[the Authority's] order involves an unfair labor practice."  5 U.S.C. 7123(a)(1) ("[a]ny person aggrieved by any final order of the Authority other than an order under – (1) section 7122 of this title (involving an award by an Arbitrator), unless the order involves an unfair labor practice under section 7118 of this title * * * may * * * institute an action for judicial review of the Authority's order [in an appropriate United States court of appeals] * * *.") (emphasis added).

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

1.  The BBG produces news and other programs for a global audience in over forty languages.  It provides all non-military international broadcasting for the U.S. government.  The Office of Cuba Broadcasting (OCB) is one of the broadcasting elements within the BBG.  See *Broadcasting Board of Governors and*

6

*AFGE Local 1812*, 66 FLRA 380 (2011).  In 1983, Congress enacted the Broadcasting to Cuba Act.  The OCB's mission involves "broadcasts to Cuba which provide news, commentary, and other information about events in Cuba and elsewhere to promote the cause of freedom in Cuba."  22 U.S.C. 1465(4).  See also 22 U.S.C. 1465b.

This case involves a 2009 RIF in the OCB.  Congress reduced the OCB's 2010 fiscal year budget by $4.2 million.  Although the agency reduced its operating costs, it ultimately determined that a RIF was necessary, and informed the union in August 2009, that a RIF (based on lack of funds and shortage of work) was in the offing.  The notice stated that the RIF would be implemented in accordance with Article 30 of the collective bargaining agreement (CBA).  JA ___ (66 FLRA at 1012).

The union notified the agency later in August that it would seek to mitigate the impact of the RIF when the RIF was actually authorized.  JA ___ (Award at 20-22).  The agency responded with budget figures, noted that any RIF action would be taken in accordance with applicable law and congressional authorizations, and welcomed "any ideas" the union might have.  JA ___ (*id*. at 21).  In September, the agency provided the union with the annotated retention registers that would be used to issue specific RIF notices to bargaining unit members in accordance with Article 30 § 8.  JA ___ (*ibid*.).  In November, the union filed an "institutional

7

grievance" under Article 21, Section 7 of the CBA, alleging that the agency failed to engage in impact bargaining prior to implementing the RIF. See JA ___ (*id*. at 20). The grievance alleged that the failure to bargain constituted a ULP under 5 U.S.C. 7116(a)(5) & (8) and the CBA. JA __ (*id*. at 22). The agency denied the grievance, stating that there was no duty to bargain midterm over the impact and implementation of the RIF as it was being conducted in accordance with Article 30 of the parties' CBA, which "covered" the subject of RIFs.[3] *Ibid*. On December 19, 2009, the agency implemented the RIF, and ultimately, 14 employees were separated (and two were bumped). JA ___ (Award at 13). The parties proceeded to arbitration.

2.  In the arbitration, the parties were unable to stipulate the issues. As a result, the Arbitrator framed the issues as follows:  (1) "[i]s the grievance arbitrable as a whole and/or only in part?"; (2) "[d]id the agency violate the [FSLMRS] and/or the [CBA], including past practice, in the matter of the * * * RIF?"; and (3) "[w]hat shall be the remedy?"  JA __-__ (Award at 3-4); JA ___ (66 FLRA at 1012). In large part, the agency's defense was that it had no duty to bargain because the impact and implementation of a RIF was already "covered by" the

---

[3] A detailed recitation of the provisions in Article 30 is set out at pp. 23-24, *infra*. See also JA __-__ (66 FLRA at 1021-1023) (appendix to Authority opinion); JA __-__ (Award at 4-11); JA __ (Jt. Ex. 1).

CBA; hence, there was no duty to bargain.  See JA ___-___ (Agency Post-Hearing Br. at 9-12).

After a lengthy hearing, the Arbitrator found that the BBG violated the FSLMRS and the collective bargaining agreement with respect to the 2009 RIF and ordered relief with respect to several individuals even though all that was at issue was an "institutional grievance."  JA __-__ (Award at 92-95).  The Arbitrator concluded that the RIF was not "covered by" the collective bargaining agreement, that therefore the agency had a duty to bargain over the impact and implementation of RIFs, and that the agency had violated this duty.  JA __ (66 FLRA at 1012), citing JA __ (Award at 59).  The Arbitrator rejected the agency's contention that Article 30 – through its 11 sections – comprehensively  covers the issue of RIFs and therefore absolves the agency of any duty to bargain again over those procedures.  Instead, the Arbitrator found that Articles 3 and Article 30 together permit midterm bargaining over RIFs and that, although Article 30 covers numerous procedures for RIFs, union testimony discussing the parties' past practice and bargaining history revealed that Article 30 had not barred additional bargaining over RIFs as they occurred.  JA __-___ (66 FLRA at 1012-1013), citing JA __ (Award at 61).  See also citing JA __-__, __-__ (Award at 58, 59-64, 67-68) (discussing the fact that the agency had engaged in I&I bargaining over RIFs occurring in 1994, 1995, 1997, 2000, and 2001 that went beyond the terms of

Article 30).[4]  The Arbitrator further stated that the "covered by" defense did not

apply because the CBA "does not cover every 'appropriate arrangement' that

might be negotiated for every employee whose position might be scheduled for

elimination pursuant to a RIF."  JA __ (Award at 64).  The Arbitrator thus

concluded that the agency had violated both the CBA and the FSLMRS in failing

to bargain over the impact and implementation of the 2009 RIF.  JA ___ (Award at

48-49, 94).

　　　The Arbitrator also found that the agency violated Sections 4(b), (c), and (e)

of the CBA because:  the agency made no effort to assign separated employees to

vacant positions, retrain them, freeze vacancies, assign employees to other

components, or offer separated employees priority consideration for various

positions; the agency was required to place employees in vacant positions without

regard to OPM's regulations, standards and requirements; the agency's conduct

was inconsistent with an agency manual regarding RIFs; separated employees had

a contractual entitlement to priority consideration for other positions, even if those

positions were outside of their competitive area; and excepted-service employees

were entitled to priority consideration for vacant competitive-service positions; and

---

[4] The first three of these RIFs occurred under the BBG's predecessor agency, the
U.S. Information Agency (USIA).  The BBG became an independent federal entity
pursuant to the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No.
105-277, §§1301 et seq., 112 Stat. 2681-2761, effective October, 1, 1999, when
USIA was abolished.

the agency did not conduct a cost study before it conducted the RIF "as allowed" by Article 30, Section 3(a). JA ___ (66 FLRA at 1013), citing JA __-__ (Award at 79-83).

Finally, the Arbitrator found that the agency had failed to prove that the RIF was conducted for legitimate reasons, rejecting the agency's contention that the RIF occurred because of a shortage of funds and lack of work. The Arbitrator noted that the General Accountability Office (GAO) had prepared reports for Congress concerning BBG's operations and that one of the reports noted allegations of fraud and abuse, that several employees (including bargaining unit employees) spoke to various outside sources about this alleged fraud and abuse, and that the agency conducted the RIF to "get rid of" employees who had spoken critically about the agency to the GAO and Congress. JA ___ (66 FLRA at 1013), citing JA __-__, __-__, __-__ (Award at 15-16, 28-29, 72-73); and 5 C.F.R. 351.201(a)(2)).

The Arbitrator thus concluded that the agency violated the FSLMRS as well as the collective bargaining agreement and sustained the grievance. She ordered the agency to rescind the RIF, reinstate all affected employees to their previous positions, and provide those employees with backpay in accordance with the Back Pay Act. JA ___; 66 FLRA at 1013 (citing Award at 94 (JA ___)). The Arbitrator

11

also retained jurisdiction "to hear a petition for [a]ttorney [f]ees should one be submitted by the Union." *Ibid*.

3.  The agency filed numerous exceptions, falling into three general categories:  (1) the agency had no duty to engage in midterm bargain over the RIF because the subject of RIFs was already "covered by" the CBA; (2) the union filed an institutional grievance pursuant to which the union could only seek institutional remedies (such as an order to bargain over the impact and implementation of the RIF) but could not challenge the RIF itself or seek remedies available only to individuals (such as job restoration and back pay)[5]; and (3) under OPM regulations, the agency is not allowed to place excepted-service employees in competitive-service positions.  See JA ___ (66 FLRA at 1013-1015); and JA __-__ (Agency Exceptions 18-39).

The Authority dismissed numerous exceptions as not having been raised before the Arbitrator and therefore not properly raised in exceptions, JA __-__ (66 FLRA at 1016-1017), and denied the rest, JA __-__ (66 FLRA at 1017-1021).  The Authority did not address the statutory "covered-by" defense.  According to the Authority, the Arbitrator had determined that the agency had a duty to bargain

---

[5] The agency argued that only individual employees could challenge the RIF and could do so on the theory that the RIF was illegally aimed at them, for example, for whistleblower activity or because the agency failed to follow applicable law and regulations in RIFing them; however, here, only the union was a grievant.  JA __-__, __-__ (Agency Exceptions at 24-25, 29-30).

pursuant to provisions of the CBA itself, that that determination was "a separate and independent basis for the award," that the agency had not shown that aspect of the award to be "deficient, and that, as a result, it "need not address any claims regarding an alleged statutory violation." JA ___ (66 FLRA at 1019 n.5). The Authority also rejected the BBG's contention that the Arbitrator erred in finding a "past practice" of midterm bargaining over RIFs, ruling that the agency had not properly challenged that finding as a "nonfact." JA __ (66 FLRA at 1017). It also rejected the agency's argument that, because the grievance was institutional, individual relief was improper. JA __-__ (66 FLRA at 1016-1018); JA __, __ (Agency Exceptions at 25, 27).

The Authority did not contest the agency's argument that 5 C.F.R. 351.705(b)(6) "prohibits the Agency from assigning excepted-service employees to competitive-service positions." JA __ (66 FLRA at 1017). Instead, it said, "the Arbitrator did not find that the Agency was required to make any such *assignments*" but, rather, that the agency was required "to give employees *priority consideration* for vacant positions." *Ibid*. (italics in original). See also JA ___ (66 FLRA at 1020).

13

## SUMMARY OF ARGUMENT

1.  The FSLMRS requires management to bargain with unions over the impact and implementation of management's exercise of its reserved rights. However, there is no obligation to bargain midterm over matters "covered by" – or already addressed in – a collective bargaining agreement.  Here, the agency asserted that Article 30 of the CBA comprehensively "covered" the subject matter of RIFs and therefore had no duty to bargain over the 2009 RIF.  The Authority avoided this argument, ruling that the Arbitrator had identified a contractual duty to bargain that created "a separate and independent basis" for upholding the arbitral award which, in turn, relieved the Authority of the need to address the "covered by" defense.  But a contractual duty to bargain midterm exists only if the "covered by" defense does not apply:  that is, if the statutory "covered by" defense applies, the agency has no duty to bargain – period – whether under the statute or a collective bargaining agreement.  Accordingly, the scope and meaning of the CBA is an integral part of the "covered by" analysis, not independent of it; the Authority was therefore required to address the agency's "covered by" defense; and under well-settled precedent of this Court and the Authority, the Authority was required to address the argument even where the CBA does not *expressly* cover or address the terms of the proposal.

Therefore, the Authority's failure to address the agency's "covered by"

14

defense – without more – requires vacation of the Authority's order.  While the appropriate remedy – remand or outright reversal – lies within the Court's discretion if it agrees with the agency's position, there are strong arguments in favor of an outright reversal.

First, Article 30 of the CBA contains 11 sections that comprehensively address all of the procedures and arrangements for implementing RIFs.  The mere comprehensiveness of the Article demonstrates that it was not intended to be a starting place for bargaining whenever the agency proposed a RIF.  Second, neither Article 30 nor the CBA in general contains a "reopener" clause permitting midterm bargaining over RIFs, and the union has never argued that it does.  The unambiguous and express language of Article 30 requires "consultation," not "bargaining," whereas Articles 26 and 28 – which *do* contain reopener clauses – expressly require midterm "bargaining" as to the subject matter of those articles.  Third, the Arbitrator (and the Authority) improperly avoided the unambiguous language of Article 30 by looking to the union's parol evidence allegedly establishing a "past practice" (and bargaining history) of midterm bargaining.  However, the starting place for contract interpretation is the contract itself, and reference to parol evidence in the face of unambiguous language was unquestionably wrong.  Furthermore, bargaining where the "covered by" defense is available is discretionary, and for that reason, such bargaining cannot establish a

15

waiver of the defense for all time.

2. The Arbitrator determined that the agency violated Article 30 § 4(e) by failing to give priority consideration to excepted-service employees for assignment to competitive-service positions. But OPM government-wide regulations bar such assignments. No management official, therefore, had the authority to agree to Section 4(e) if its terms were read to mean that management would have to act contrary to government-wide regulations. Thus, if the Arbitrator's award is read to order the agency, as part of the status quo ante remedy, to assign excepted-service employees to competitive-service positions, it is contrary to law and invalid for that reason.

The Authority upheld the Arbitrator's award by reasoning that OPM regulations only prohibit "assigning" – as opposed to "considering" – excepted-service employees to competitive-service positions. Assuming that the Authority is correct, the Arbitrator's award is unobjectionable as a practical matter (even though it conflicts with OPM regulations), but it accomplishes nothing. Nonetheless, the Authority's decision appears at odds with what the Arbitrator actually ordered and thus puts the agency in the position of acting at its peril. For that reason, the decision in this respect should be reversed.

3. Jurisdiction exists to review the Authority's order for two reasons. First, the Authority's order involves, or at least implicates, a ULP because of the

16

agency's assertion of the "covered by" defense.  That defense is a statutory defense and necessarily involves or implicates a statutory duty to bargain.  The fact that the Authority avoided addressing the "covered by" defense is not dispositive.  The Authority did so because the Arbitrator found a contractual duty to bargain that, in the Authority's view, created a separate and independent basis for upholding the Arbitrator's award here.  But the contractual duty to bargain and the "covered by" defense are dependent on each other, not independent; the Authority was required to address that defense; and, as a consequence, the Authority's refusal is reviewable under 5 U.S.C. 7123(a) as involving or implicating a statutory ULP.

Second, the Authority's order implicates sovereign immunity.  In the FSLMRS, Congress explicitly barred agencies from agreeing to terms "inconsistent with any Federal law or any Government wide rule or regulation," 5 U.S.C. 7117(a)(1).  The Arbitrator's award essentially finds that the agency agreed to illegal terms that potentially require the BBG to violate OPM government-wide regulations, *i.e.*, by assigning excepted-service employees to competitive-service positions.  For this reason, the award implicates sovereign immunity and gives this Court jurisdiction to review the Authority's order.

17

## ARGUMENT

### Standard of Review.

**1.**  Under 5 U.S.C. 7123(c), courts "will * * * set aside an order of the Authority [if] it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *NTEU v. FLRA*, 452 F.3d 793, 796 (D.C. Cir. 2006) (quoting 5 U.S.C. 706(2)(A), which is the standard of review set forth in Section 7123(c); and citing *NTEU v. FLRA*, 414 F.3d 50, 57 (D.C. Cir. 2005)).  See also *NTEU v. FLRA*, 399 F.3d 334, 337 (D.C. Cir. 2005) (quoting 5 U.S.C. 706(2)(A)). "The Authority is entitled to considerable deference when * * * applying the general provisions of the [FSLMRS] to the complexities of federal labor relations," and the court of appeals will defer to its interpretation of the Act if "reasonable and coherent."  *Ibid*. (internal quotation marks omitted).  See also *NTEU v. FLRA*, 414 F.3d at 57; *NAAE v. FLRA*, 473 F.3d 983, 986 (9th Cir. 2007).  Such deference, though, "'cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.'"  *BATF v. FLRA*, 464 U.S. 89, 97 (1983) (quoting *American Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 318 (1965)).  Thus, reviewing courts are not to "rubber stamp" administrative decisions that are inconsistent with the statutory mandate or legislative intent.  *FLRA v. Aberdeen Proving Ground*, 485 U.S. 409, 414 (1988); *BATF*, 464 U.S. at 97.

18

# I.

## THE BBG HAD NO DUTY TO BARGAIN OVER THE 2009 RIF BECAUSE THE SUBJECT OF RIFs WAS "COVERED BY" THE EXISTING COLLECTIVE BARGAINING AGREEMENT.

### A.    The Authority's Failure To Address The "Covered By" Defense, At The Very Least, Requires A Remand.

In *Federal Bureau of Prisons*, 654 F.3d 91 (D.C. Cir. 2011), this Court described the importance of the "covered by" defense in federal labor-management relations:  "[a]n agreement between an agency and its employees' designated representative must be construed 'in view of the policies embodied in the [FSLMRS],'" in which "finality to collective bargaining" – "stability and repose" – is important; courts should therefore "reject any construction of a collective bargaining agreement that treats it as but 'a starting point for constant negotiation over every agency action.'"  654 F.3d at 95 (quoting *NTEU*, 452 F.3d at 797; and *Dept. of Navy,* 962 F.2d at 59).  See also *Social Security Administration*, 47 FLRA at 1018.  But, here, the Authority refused to address the "covered by" defense.  In the Authority's view, the Arbitrator identified a contractual duty to bargain that created "a separate and independent basis" for upholding the arbitral award, thus relieving the Authority of the need to address the "covered by" defense.  See JA ___ (66 FLRA at 1019 n.5).  But that conclusion is unquestionably wrong:  a contractual duty to bargain midterm exists *only if* the "covered by" defense does

not apply: that is, if the statutory "covered by" defense applies, the agency has no duty to bargain – period – whether under the statute *or* a collective bargaining agreement. See *Federal Bureau of Prisons*, 654 F.3d at 94 ("[i]f a collective bargaining agreement 'covers' a particular subject, then the parties to that agreement 'are absolved of any further duty to bargain about that matter during the term of the agreement'") (citing *Dept. of Navy,* 962 F.2d at 53); *Social Security Administration,* 47 FLRA at 1016-18 (parties are free from any duty to bargain mid-term over matters "expressly contained in" *or* "inseparably bound up with" a contract term). Cf. *IRS v. FLRA*, 963 F.2d 429, 440 (D.C. Cir.1992) ("In the refusal to bargain context, * * * the resolution of the [duty to bargain] claim is entirely a matter of contract interpretation, because whether there is a duty to bargain depends solely upon what the contract means."). Accordingly, the "covered by" analysis and the scope and meaning of Article 30 are integrally related, not independent, and the Authority erred by not addressing the former.

Integrally related to the foregoing point, it is well established that the "covered by" defense can apply even when the CBA does not contain the specific terms of a union proposal. The Authority has established a two-prong framework for determining whether the "covered by" defense applies. First, it "will * * * look to whether the express language of the agreement provision reasonably encompasses the subject matter of the proposals," and "will not require an exact

20

congruence of [the] language, but will find the requisite similarity if a reasonable reader would conclude that the provision settles the matter in dispute." *Sacramento Air Force Logistics Center McClellan Air Force Base, California*, 47 FLRA at 1252 (internal quotation marks and citation omitted).  Second, if the agreement provision does not expressly encompass the subject matter, it "will determine whether the subject matter proposed for negotiations is so commonly considered an aspect of the matter set forth in the agreement that the subject is inseparably bound up with and * * * an aspect of * * * a subject expressly covered by the contract."  *Ibid*. (internal quotation marks and citation omitted).  See also *Federal Bureau of Prisons*, 654 F.3d at 94 ("[f]or a subject to be deemed covered, there need not be an 'exact congruence' between the matter in dispute and a provision of the agreement, so long as the agreement expressly or implicitly indicates the parties reached a negotiated agreement on the subject.") (citing *NTEU v. FLRA,* 452 F.3d at 796) (internal quotation marks omitted).   Thus, although Article 30 might not cover every possible procedure or arrangement that the union could propose for midterm bargaining, a "covered by" analysis was required.

Sacramento Air Force Logistics Center* is instructive.  There, the union proposed to bargain midterm over the presentation and posting of sustained superior performance awards.  The parties had stipulated that the CBA contained "no provision expressly providing for the presentation of performance awards and

21

the posting of awards information," 47 FLRA at 1252-1253.  Nevertheless, the

Authority held that the agency had no duty to bargain midterm because the CBA

contained an extensive provision relating to performance awards and the union's

proposal "concern[ed] matters that are plainly aspects of subjects expressly

covered by that agreement."  *Id*. at 1253.  In other words, even though the precise

method for presenting awards was not spelled out, the general subject matter was

extensively "covered by" the existing agreement.  Pursuant to the same analysis,

there is a strong argument here that the union's RIF proposals were "covered by"

Article 30, meaning that the BBG had no duty to bargain over them.  And,

pursuant to the *Sacramento* analysis, it is clear that the Arbitrator's conclusion that

the "covered by" doctrine did not apply because Article 30 does not cover every

conceivable "appropriate arrangement" for a RIF, JA ___ (Award at 64), is an

erroneous statement of the law.

*     *     *     *     *

In sum, the Authority was required to determine whether the "covered by"

defense applied in this matter.  Its failure to do so – by itself – requires vacation of

the Authority's order.  While the appropriate remedy – remand or outright reversal

– lies within the Court's discretion (if it agrees with the agency's position), the

discussion in Point I(B), below, demonstrates why outright reversal is warranted.

22

**B.** **Application Of The "Covered By" Defense Requires Reversal.**

1.  Article 30 is comprehensive:  it contains 11 sections and addresses all aspects of the procedures and arrangements for conducting a RIF.  See JA ___-___ (Award at 6-11).  The 11 sections provide:

(1) a statement that the Article in general applies to RIFs conducted under 5 C.F.R. Part 351, a definition of a RIF (reflecting the definition in 5 C.F.R. 351.201(a)(2)), a statement regarding the transfer of the performance of a continuing function from one competitive area to one or more other competitive areas, and an exception to when the procedures and appropriate arrangements in Article 30 do not apply (Section one);

(2) a statement of policy regarding RIFs (Section 2);

(3) a description of the actions the agency may take as alternatives to a RIF (Section 3);

(4) a description of the actions the agency may take to reduce the impact of a RIF (Section 4);

(5) a requirement for the notification of the RIF to the union and employees (Section 5);

(6) a mechanism to provide an offer of positions to affected employees, when possible (Section 6);

23

(7) what the competitive areas will consist of (Section 7);

(8) a requirement to establish competitive levels and retention registers (Section 8);

(9) a release from competitive levels (Section 9);

(10) assistance for displaced employees (Section 10); and

(11) grievance rights to employees who believe their rights under statute, regulation, or the CBA have been violated, referring to the grievance provision of the CBA, Article 21 (Section 11).

*Ibid*.

The comprehensiveness of the Article, alone, demonstrates that it was not intended to be a starting place for bargaining whenever the agency proposed a RIF. Accord: *Sacramento Air Force Logistics Center*, 47 FLRA 1249, *supra*, at pp. 21-22. See also *NTEU v. FLRA*, 452 F.3d at 797 ("although the Authority defers to an arbitrator's interpretation of a contract, it properly reviews de novo the arbitrator's application of the 'covered by' doctrine").

*Federal Bureau of Prisons* also demonstrates why the "covered by" defense applies here. Before the events at issue in that case, when no budget problems existed at the Bureau of Prisons (BOP), wardens would rely on regular staff overtime (not "relief" officers on regular time) to cover vacant positions. Regular staff would be paid at higher overtime rates because covering the vacant positions

24

would be in addition to the regular daily or weekly assignment. 654 F.3d at 92-93. In 2004, the BOP faced a serious budget shortfall and, to save funds, needed wardens to assign more officers to relief duty each quarter in addition to reducing the number of officers assigned in advance to other posts. *Id*. at 93. The BOP issued a memorandum stating that the quarterly rosters issued by wardens pursuant to the CBA should, in the future, include posts "critical" to the mission of that particular facility and advised that other posts – such as "Medical Escort" or "Front Gate Officer" – "typically" should not be deemed "critical." *Ibid*. These "non-critical posts" were then to be lumped into the "relief" category, whose officers would work at regular (not overtime) rates when needed. *Ibid*. Thus, when making roster assignments pursuant to Article 18 of the parties' CBA, wardens would likely have fewer "critical" posts going forward, but more "relief" posts, and could therefore cover "critical" post absences (because of annual or sick leave) with "relief" officers who would be paid regular, rather than overtime, rates. One week after the memorandum was sent to the wardens, the union demanded to bargain over how the mission critical standard would be implemented. *Ibid*. The BOP refused to bargain, stating that it had already bargained over the procedures for assigning work and that that bargaining had resulted in Article 18 of the CBA; thus, no further duty to bargain was required. *Ibid*. The Authority agreed with the union. *Ibid*.

25

This Court reversed. The Court began by noting that, under Section 7106(a), management had a non-negotiable right to assign work, but under Section 7106(b)(2) & (3) had an obligation to bargain over the "procedures" used to exercise that authority and the "appropriate arrangements" for "adversely affected" employees – impact and implementation bargaining. 654 F.3d at 95. But an agreement that encompasses procedures and arrangements "covers" the I&I bargaining obligation under the statute and requires no further bargaining on the "covered" subject. *Ibid.* The Court agreed with the BOP that Article 18 "represent[s] the agreement of the parties about the procedures by which a warden formulates a roster, assigns officers to posts, and designates officers for the relief shift"; that, since the parties had reached an agreement about how and when management would exercise its right to assign work, "the implementation of those procedures, and the resulting impact, do not give rise to a further duty to bargain"; and, thus that "Article 18 therefore covers and preempts challenges to all specific outcomes of the assignment process." *Id.* at 96.

The same result should obtain here. Article 30 is the result of bargaining over the procedures and arrangements that apply to RIFs. What the union wanted to do in 2009 was to bargain over procedures and arrangements when Article 30 already covered that subject matter. Put another way, what the union wanted to do here is precisely what this Court rejected in *Federal Bureau of Prisons*, *i.e.*, to

26

bargain over "the impact and implementation" of procedures and arrangements already bargained for.  654 F.3d at 96.  But such bargaining "makes [the parties'] collectively bargained agreement no more than a 'starting point for constant negotiation' rather than a guarantor of 'stability and repose,'" *ibid*. (quoting *Dep't of Navy*, 962 F.2d at 59), and that result is contrary to the "covered by" doctrine.

2. a.  If Article 30 contained a "reopener" clause, like the ones in Articles 26 and 28 (see discussion below), the agency would have no basis for asserting a "covered by" defense.  See, *e.g., U.S. Dept. of Labor, Wash., D.C.,* 60 FLRA 68, 72 (2004) (citing *Social Security Administration*, 47 FLRA at 1013).  A "reopener" clause "specifies the conditions under which a party may seek to renegotiate a term 'covered by' the agreement."  *NTEU v. FLRA*, 399 F.3d at 341.  See also *id*. at 341-343 (discussing "reopener" and "zipper" clauses in general).[6]  But neither Article 30 nor the CBA in general contains a "reopener" clause allowing midterm bargaining over RIFs, and the union never made such an argument.

Articles 26 and 28 of the CBA, on the other hand, contain "reopener" language.  Article 26 ("Work Space"), which extensively addresses work space (Sections 1 and 2) and work space moves (Section 3), specifically states in Section 4 that, "[w]hen a space change * * * is to occur, * * * the agency will notify the

---

[6] A "zipper" clause "waives the right of either party to raise issues for bargaining during the term of the agreement, whether or not the matter was considered during initial bargaining over the agreement."  399 F.3d at 341.

Union," and the "union shall have an opportunity *to bargain* before

implementation on anything not specifically addressed in this Article * * *." JA

___ (Jt. Ex. 1) (emphasis added). Article 28 § 3 addresses "New Technology" and

states in Section 3 that "[a]doption of such [new] devices and systems is at the

discretion of Management," but nevertheless specifically states that

"[m]anagement recognizes the right of the Union *to bargain* on any adverse impact

created by the use of the innovation." JA ___ (Jt. Ex. 1) (emphasis added). See

also JA __-__ (Agency's Exceptions at 21-22). Given that the parties knew how to

write reopener clauses *and* knew how to write reopener clauses that specifically

permit midterm "*bargaining*," as opposed to midterm "consultation," the absence

of similarly worded reopener language in Article 30 *must* mean that Article 30 was

not intended to be the starting place for negotiation over every RIF.

    b.  Notwithstanding the foregoing, the Authority deduced a continuing

contractual duty to bargain over RIFs in Articles 3 and 30 § 2 despite the absence

of any reopener language like that found in Articles 26 and 28. See JA ___ (66

FLRA at 1019). Aside from the fact that neither article, separately or together,

contains reopener language, neither Article (nor the two taken together) requires

*bargaining*. Article 3 contains certain definitions and, in defining the term

"[c]onsultation," states that BBG must "consider[] the Union's views before

implementing changes in personnel policies or regulations which are *not*

28

negotiable."  JA __; *id.* at 1021 (quoting Article 3) (emphasis added).  See also JA

__-__ (Award at 4); JA __-__ (3/29/11 Tr. at 45-46).  By definition, Article 3

concerns matters that are *not* the subject of collective bargaining.  With respect to

those nonnegotiable matters, Article 3 requires that the union be provided with

notice and the opportunity to request negotiations and consult, but it does *not*

obligate bargaining over those matters.  *Ibid.*

      Article 30, in turn, addresses RIFs, which are subject to bargaining as to

procedures and implementation, but Section 2 (entitled "Policy") says only that

BBG will "*consider the ideas of the union* to avoid and/or mitigate the impact of a

RIF."  JA ___, 66 FLRA at 1021 (emphasis added).  See also JA ___ (Award at 6);

JA __-__ (3/29/11 Tr. at 54-55).  That language, like Article 3, contains the term

"consultation," not "bargaining," which can only be deemed purposeful since both

terms are established terms of art under the FSLMRS.  Compare, *e.g.*, 5 U.S.C.

7106 ("bargaining") with 5 U.S.C. 7113 & 7117(d)(2) (where unions have

"national consultation rights," agency gives notice of planned substantive changes

to conditions of employment; union responds with ideas and recommendations;

agency considers the views or recommendations before taking final action; but

consultation does not affect or limit collective bargaining rights) and 7116(a)(5)

(ULP for failure to "consult * * * in good faith").  See *Nat'l Guard Bureau and*

*Association of Civilian Tech.*, 57 FLRA 240 (2001) (ULP for failure to consult with union with "national consultation rights").

In sum, neither Article 3 nor Article 30 – or the two taken together – establishes a contractual duty to "bargain," much less a duty to bargain midterm. In fact, Articles 3 and 30 unambiguously exclude any obligation to bargain over RIFs and, instead, refer to consultation – a less formal role for the union.

c.   Rather than rely on the plain, unambiguous language of Articles 3 and 30, the Arbitrator relied on union testimony concerning an alleged "past practice" of midterm bargaining in 1994, 1995, 1997, 2000, and 2001 and an alleged "bargaining history" to conclude that the parties thought Article 30 authorized midterm bargaining over RIFs.  JA __, __-__, __-__ (Award at 58, 59-64, 67-68).[7] The agency specifically objected to this evidence as irrelevant to the "covered by" defense in light of the express language of the CBA.  See JA ___-___, ___-___, ___, ___-___ (Tr. 10/20/10 at 32-33, 52-53, 57, and 62-63).  "Resort to parol evidence may only be had where the language of an agreement is ambiguous on its face."  *AFGE Local 2924 v. FLRA*, 470 F.3d 375, 383 (D.C. Cir. 2006).  Neither the Arbitrator nor Authority may "conjure[] up an ambiguity in unambiguous

---

[7] The Arbitrator stated that the "the relevant language of the [CBA] is not clear and unambiguous."  JA ___ (Award at 60).  But the Arbitrator did not say how or what language in particular was ambiguous.  See JA __-__ (Award at 60-64).

language by crediting self-serving parol evidence that purport[s] to refute what the contract sa[ys]." *Ibid*.  Yet, that is precisely what occurred here.

   In any event, the Arbitrator's reliance on "past practice" evidence was wrong for a number of additional reasons.[8]  First, if there was a "past practice," it was a past practice of *discretionary* bargaining over a permissive subject, which the agency could terminate.  See discussion, *infra*, at pp. 32 (bargaining is discretionary when "covered by" defense is available).

   Second, the "covered by" defense is a statutory defense.  See *NTEU v. FLRA*, 399 F.3d at 341) (discussing Authority decisions establishing the "covered by" defense as a statutory defense).  See also *NAGE, Local R3-32*, 61 FLRA 127, 131 (2005) ("The 'covered by' doctrine is a defense to an alleged failure to satisfy a statutory bargaining obligation.") (citing cases).  The waiver of a statutory defense "must be clear and unmistakable."  *Wright v. Universal Martime Service*

---

[8] The "past practice" analysis normally applies to whether a *condition of employment* has been established, not whether a statutory defense may be asserted. See *Veterans Administration and Veterans Administration Medical Center, Lyon,* 24 FLRA 505 (1986), and *Dep't of Treasury, IRS and NTEU, Chapter 19,* 62 FLRA 411, 413 (2008).  See also *AFGE Local 2741 v. FLRA,* 866 F.2d 1443, 1448 (D.C. Cir.).   Some examples of conditions of employment established – or alleged to have been established – through past practice include allowing employees computer access while on administrative leave, employee social activities, and allowing employees to use their cell phone and pagers in certain work areas.  *DHS Customs and Border Patrol,* 67 FLRA 46 (2012); *DHS Customs and Border Patrol,* 59 FLRA 910 (2004); and *SSA-Mid America Service Center*, 9 FLRA 229, 240 (1982).

*Corp.*, 525 U.S. 70, 79-80 (1998) (citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)).  But "past practice" did not establish such a clear and unmistakable waiver (nor was there such a waiver in the form of a "reopener clause" in the CBA, see pp. 27-28, *supra*).  Indeed, the union itself testified that, as early as 1996, the agency informed the union that the agency was not obligated to engage in bargaining over RIFs because of the "covered by" defense and that its decision to bargain – as opposed to "consult" – was a matter of discretion.  JA ___ (Tr. 10/20/10 at 25).

Third, assuming that the concept of "past practice" applies to a statutory defense (see n.8, *supra*), the BBG – for its part – may have engaged in bargaining but the contract plainly only required "consultation."  The Authority has recognized that bargaining over a matter "covered by" a CBA is a permissive subject of bargaining – *i.e.*, a discretionary decision.  See *AFGE Local 3937 and SSA,* 64 FLRA 17, 21-22 (2009).  However, the Authority has never ruled that a decision to bargain notwithstanding the availability of the "covered by" defense forever bars the agency from raising the "covered by" defense as to future proposals addressing a similar subject matter.  Accordingly, all that can be said about the parties' bargaining in the 1994-2001 period is that the BBG could have asserted a "covered by" defense but did not; that the BBG engaged in bargaining as a matter of discretion but never waived the "covered by" defense; that Article 30

32

was never amended by prior midterm bargaining; and that, in 2004, 2007, and 2009, the agency appropriately limited the union to the consultative role unambiguously expressed in Article 30.

Fourth, if a "past practice" analysis is appropriate, Authority precedent requires the union to show "that the practice has been *consistently* exercised over a significant period of time and followed by both parties, or followed by one party and not challenged by the other." *DHS Customs and Border Protection*, 59 FLRA at 914 (emphasis added). See also *SSA Mid-America Service Center*, *supra*, 9 FLRA 229. Here, the agency demonstrated that no such consistent practice existed. JA ___-___ (Agency Post Hearing Br. at 14-15). In 2004 and 2007, the two RIFs prior to the 2009 RIF, the agency gave the union notice of the RIFs, declared that the RIFs would be implemented pursuant to Article 30's terms, and was not asked to engage in impact bargaining by the union; nor did the union register any other challenge or objection to the assertion of the "covered by" defense. JA ___ (Agency's Exceptions at 22-23); JA ___-___ (Agency's Post Hearing Brief at 14-15); JA ___-___ (11/16/10 Tr. at 7-8); and JA ___-___ (3/29/11 Tr. at 88-99). The BBG's point was that its implementation of the 2004 and 2007 RIFs pursuant to Article 30's terms – without opposition from the union – demonstrated that no "consistent" past practice of midterm bargaining over RIFs

33

existed when the 2009 RIF was announced. *Ibid.* See also JA __ (Tr. at 25

(10/20/10)).

The Authority rejected the agency's challenge to the Arbitrator's "past

practice" determination because, in the Authority's view, the agency failed to

argue that the Arbitrator's finding was based on a "nonfact." JA ___ (66 FLRA at

1017); JA ___ (66 FLRA at 1020) ("To establish that an award is based on a

nonfact, the appealing party must show that a central fact underlying the award is

clearly erroneous, but for which the arbitrator would have reached a different

result."). But the agency did make such an argument, and the only apparent reason

for the Authority's contrary ruling is the agency's failure to use the magic word,

"nonfact."

The BBG unquestionably argued below that it was "undisputed" that the

agency asserted its "covered by" position in the 2004 and 2007 RIFs (*i.e.*, in

conducting those RIFs, the agency's only limitation was to comply with Article 30

procedures), that the union did not request impact bargaining in those years, and

that the union acquiesced to the agency's actions in those years. JA ___-___

(Agency Exceptions at 22-23). See also JA ___-___ (Agency's Post Hearing Br. at

14-15); JA ___-___ (11/16/10 Tr. at 7-8); and JA ___-___ (3/29/11 Tr. at 88-99).

These facts, in fact, are undisputed. Thus, the agency clearly made a "nonfact"

argument regarding "past history" – *i.e.*, that there was no consistent "past

34

practice" or, put another way, that any practice that existed in the 1994-2001 period ended by 2004. *Ibid.* That the agency used the term "undisputed" instead of "nonfact" does not undercut the fact that it advanced a "nonfact" argument. See *U.S. Dept. of Commerce v. FLRA*, 672 F.3d 1095, 1102 (D.C. Cir. 2012) (although petitioner "did not use the magic words 'collateral estoppel,'" the agency nonetheless argued the substance of a collateral estoppel defense and the FLRA understood the agency's argument to have implicated that issue); *FAA v. FLRA*, 145 F.3d 1425, 1428-29 (D.C. Cir. 1998) (agency stated its position clearly, but incorrectly cited two regulations and failed to cite specific subsections of the gift rules of the Standards of Ethical Conduct that were at issue; the Authority refused to address the issues, but on appeal, this Court concluded that these regulations were neither "obscure nor difficult to locate," and that the Authority had little trouble identifying the specific language); and *Dept. of Treasury, U.S. Customs v. FLRA*, 762 F.2d 1119, 1122 (D.C. Cir. 1985) (despite the fact that the agency did not cite the specific regulation at issue, Court considered it because it was well-known and the agency's argument was "presented to the Authority with sufficient clarity to make it proper for consideration on review"). In short, the agency made a "nonfact" argument, and the Authority erred in ruling otherwise.

The Arbitrator acknowledged that there was no bargaining vis-à-vis the 2004 and 2007 RIFs. But the Arbitrator rejected the agency's "past practice" challenge

because, she said, "[t]here is no evidence that the Union ever *requested* and was denied such bargaining before the 2009 OCB RIF occurred." JA __-__ (Award at 67-68) (emphasis in original). The Authority did not address this ruling because, as previously noted, it did not address the "covered by" defense. See JA ___, ___; 66 FLRA at 1017, 1019 n.5. Nevertheless, the Arbitrator's ruling is wrong as a matter of law. If the assertion of the "covered by" doctrine is discretionary and if the agency asserted the doctrine in 2004 and 2007, it should not matter whether or not the union requested bargaining. All that matters is this: that the alleged past practice was one of discretionary bargaining and that in 2004 and 2007 – and again in 2009 – the agency determined not to participate in discretionary bargaining.

\* \* \* \* \*

For the reasons stated in Point I(B), the Authority's decision should be reversed outright.

## II.

### THE AGENCY DID NOT VIOLATE ARTICLE 30 § 4 BY FAILING TO CONSIDER EXCEPTED-SERVICE EMPLOYEES FOR COMPETITIVE-SERVICE POSITIONS.

The Arbitrator determined that the agency violated Article 30 § 4(e) by failing to give priority consideration to excepted-service employees for assignment to competitive-service positions. See JA ___-___ (Award at 79-80). The

36

Arbitrator so ruled notwithstanding the fact that OPM government-wide

regulations (as discussed below) bar such assignments.  Section 4(e) states:

> Give employees to whom specific notices have been issued
> priority consideration in applying for other positions in the
> bargaining unit at the same grade or with no greater promotion
> potential in accordance with Article 14, Merit Promotion and
> Staffing only until the effective date of the RIF.

JA ___ (66 FLRA at 1022).

In the Arbitrator's view, "the 'priority consideration' provision [*i.e.*, Section

4(e)] requires that employees subject to a RIF be given 'bona fide consideration by

the selecting official before any candidate is referred for consideration and [] the

employee will not be considered in competition with other candidates and will not

be compared with them."  JA ___ (Award at 80) (citing *Pope v. FCC*, 311 F.3d

1379 (Fed. Cir. 2002)).  See also JA ___, ___-___) (66 FLRA at 1017, 1020-1021).

In so ruling, the Arbitrator intended the agency to potentially reassign employees

into positions regardless of the type of appointment held.  She made this point

more clearly when she said that whether a RIFed employee was in the competitive

or excepted service is "irrelevant when finding vacant positions they can be placed

in * * *."  JA ___ (Award at 80).

The FSLMRS explicitly bars a federal agency from agreeing to terms

"inconsistent with any Federal law or any Government-wide rule or regulation," 5

U.S.C. 7117(a)(1), and assigning excepted-service employees to competitive-

service positions squarely conflicts with OPM government-wide regulations.  See 5

C.F.R. 351.705(b)(6) (excepted-service employees may not be assigned to

competitive-service positions).  See generally 5 C.F.R. Part 351 (OPM regulations

pertaining to RIFs).  See also, *e.g.*, *U.S. Dept. of Transp., FAA v. FLRA*, 145 F.3d

1425 (D.C. Cir. 1998) (discussing Section 7117(a)(1)); and *AFGE Local 32 v.

FLRA*, 110 F.3d 810 (D.C. Cir. 1997) (discussing OPM's government-wide

regulations pertaining to competitive areas).  No management official has the

authority to agree to terms that require management to violate either the FSLMRS

or government-wide regulations.  See, *e.g.*, *U.S. Dept. of Air Force v. FLRA*, 648

F.3d 841, 845 (D.C. Cir. 2011).  For that reason, the Article 30's "priority

consideration" provision should have been read – consistent with OPM regulations

and the BBG's understanding (see JA __ (Agency Exceptions at 23-24) and JA ___

(Agency's Post Hearing Br. at 21-22)) – to require that excepted-service

employees be given priority consideration within the excepted service.  If Section 4

required otherwise, it would be illegal and that illegality can be raised at any time.

See, *e.g.*, *AFGE v. FLRA*, 778 F.2d 850, 853-854 (D.C. Cir. 1985) (even if the

parties, including the agency head, have agreed to, or in effect ratified, a provision

– *i.e.*, "have allowed the agreement to take effect" without ever "hav[ing] * * *

asserted nonnegotiability" – "either party [subsequently] may raise illegality of the

provision as a defense to a charge that it has violated the terms of the agreement").

38

Thus, to the extent the Arbitrator's award can be read to order the agency, as part of the status quo ante remedy, to assign excepted-service employees to competitive-service positions, it is contrary to law and invalid.

The Authority upheld the Arbitrator's award by reasoning that OPM regulations only prohibit "*assigning*" – not "considering" – excepted-service employees to competitive-service positions. JA __ (66 FLRA at 1017). Assuming the Arbitrator's award can be read that way, the award is unobjectionable as a practical matter (even though it conflicts with OPM regulations), but it accomplishes nothing. Cf. *NFFE Local 2015*, 53 FLRA 967, 973 (1997) (proposals that address speculative or hypothetical concerns do not constitute arrangements). However, the Authority's decision appears at odds with what the Arbitrator actually ordered and puts the agency in the position of acting at its peril. As a result, this aspect of the Authority's decision should be reversed for the reasons just stated.

## III.

### THE COURT HAS JURISDICTION OVER THE PETITION FOR REVIEW.

**1.** 5 U.S.C. 7123(a) permits judicial review of "any final order of the Authority * * * other than an order under * * * (1) section 7122 (involving an award by an Arbitrator), unless the order involves an unfair labor practice * * *." The union's institutional grievance alleged, among other things, that the agency

failed to engage in impact and implementation bargaining over the RIF in violation

of 5 U.S.C. 7116(a)(5) and (8), both of which address ULPs.  JA ___ (Jt. Ex. 2 at

3).  The Arbitrator, in turn, found that the agency violated the FSLMRS, JA __

(Award at 94), and the Authority acknowledged that point, JA ___ (66 FLRA at

1013).  Thus, a ULP was involved or, at the very least, "implicated."  *U.S. Dept. of

the Navy v. FLRA*, 665 F.3d at 1341) (the standard for review under 5 U.S.C.

7123(a)(1) is not only whether a ULP was explicitly discussed but also whether a

ULP is "necessarily implicated by" the Authority's decision).   See also *Overseas

Education Ass'n v. FLRA*, 824 F.2d 61, 71 (D.C. Cir. 1987) (judicial review is

allowed where "the Authority's decision * * * 'necessarily implicates' a statutory

unfair labor practice") (quoting *U.S. Marshals Service v. FLRA*, 708 F.2d 1417,

1420 (9th Cir. 1983)).[9]

      In addition, a ULP is involved or "implicated" because of the agency's

assertion of the "covered by" defense.  It is a ULP for an agency "to refuse to

consult or negotiate in good faith with a labor organization as required by this

chapter."  5 U.S.C. 7116(a)(5).  The duty to engage in midterm bargaining

---

[9] The word "involves" "strongly suggests that something less than treatment 'on
the merits' is required"; rather, what is required is that "the statutory unfair labor
practice must be either an explicit ground for or be necessarily implicated by the
Authority's decision."  *Overseas Education Ass'n*, 824 F.2d at 71.  This Court has
rejected the argument that a ULP is not involved because the Authority's order did
not "explicitly discuss" one.  *U.S. Dept. of the Navy v. FLRA*, 665 F.3d at 1345.

originates from the FSLMRS's requirement that unions and management "meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement." 5 U.S.C. 7114(a)(4). But, while management has a *general* obligation to bargain midterm, see *NTEU v. FLRA,* 810 F.2d 295 (D.C.Cir.1987); *Internal Revenue Service,* 29 FLRA 162, 166 (1987), no such duty exists when the matter is already "covered by" the parties' contract. See pp. 19-22, *supra.* As previously noted (see pp. 31-32, *supra*), the "covered by" defense is a statutory defense, and as such involves – or at least implicates – the question of a statutory duty to bargain. See, *e.g.*, *NTEU v. FLRA*, 452 F.3d at 797 (the "covered by" doctrine "requires the adjudicator of a dispute over the meaning of a collective bargaining agreement to determine how broadly or narrowly the agreement should be read in view of the policies embodied in the statute establishing the duty to bargain"); *ibid*. ("[t]he 'covered by' analysis is thus analogous to the inquiry we make in order to determine whether a federal statute impliedly preempts related state law"); and *NTEU v. FLRA*, 399 F.3d at 339 ("[t]he 'covered by' doctrine embodies the FLRA's long-standing interpretation of the scope of the duty to bargain mid-term under the Statute"). And the Authority clearly agrees. See JA __ (66 FLRA at 1019 n.5) (in ruling that a "separate and independent" contractual basis existed for the Arbitrator's award, the Authority stated that it "need not address any claims [referring to the "covered by" claim] regarding an alleged statutory violation").

41

For these reasons, where the "covered by" defense is asserted in circumstances like those at issue here:  a contractual duty to bargain is *not* independent of a statutory duty to bargain; a statutory ULP is therefore involved or implicated; and jurisdiction exists to review the Authority's decision under 5 U.S.C. 7123(a).  This Court has observed that "judicial review furthers Congress's other stated interest of ensuring 'a single, uniform body of case law concerning unfair labor practices,'" *Association of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697, 699 (D.C. Cir. 2007) (quoting *AFGE Local 2510 v. FLRA*, 453 F.3d 500, 505 (D.C.Cir.2006)), and that principle fully applies here.

2.  This case also implicates sovereign immunity.  In the FSLMRS, Congress explicitly barred agencies from agreeing to terms "inconsistent with any Federal law or any Government-wide rule or regulation * * *."  5 U.S.C. 7117(a)(1).  Recognizing this prohibition, this Court has established the principle that, "even if the parties have never asserted nonnegotiability and have allowed the agreement to take effect, either party [subsequently] may raise illegality of the provision as a defense to a charge that it has violated the terms of the agreement." *AFGE v. FLRA*, 778 F.2d at 853-854.  As discussed in Point II, *supra*, the Arbitrator's award potentially requires the BBG to violate government-wide regulations, 5 C.F.R. 351.705(b)(6), by assigning excepted-service employees to competitive-service positions.  Such an order would require management officials

42

to violate the law, implicating principles of sovereign immunity and giving this Court jurisdiction to review such questions – even if not raised before the Authority.  See *U.S. Dept. of Air Force v. FLRA*, 680 F.3d at 830.

## CONCLUSION

For the foregoing reasons, the Authority's order should be reversed on the grounds that the "covered by" defense applies.  In the alternative, the decision should be vacated with a remand to the Authority to consider the agency's "covered by" defense.  Finally, the order should be reversed insofar as it reads the CBA to require the agency to assign excepted-service employees to competitive-service positions.

Respectfully submitted,

STUART F. DELERY
 *Assistant Attorney General*

LEONARD SCHAITMAN
 202-514-3441

/s/ Howard S. Scher
HOWARD S. SCHER
 202-514-4814
*Attorneys, Appellate Staff*
*Civil Division, Room 7239*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC  20530-0001*

AUGUST 2013

43

## Certificate of Compliance With
## Federal Rule of Appellate Procedure 32

I hereby certify that this initial opening brief complies with the requirements

of Fed. R. App. P. 32(a)(7) because it has been prepared in 14-point Times new

Roman, a proportionally spaced font.  I further certify that this brief complies with

the type-volume limitation because it contains **9,468** words, excluding the parts of

the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft

Word 2010.



/s/ Howard S. Scher
Howard S. Scher

**Certificate of Service**

I hereby certify that on this **7th day of August, 2013**, I electronically filed the foregoing initial opening brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I further certify that I will cause five (5) paper copies of this brief to be filed with the Court within two (2) business days.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Howard S. Scher
Howard S. Scher

# STATUTORY ADDENDUM
## (Pertinent Statutory Provisions)

# 5 U.S.C.

## § 7103

(a) For the purpose of this chapter– * * *

(12) "collective bargaining" means the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached, but the obligation referred to in this paragraph does not compel either party to agree to a proposal or to make a concession; * * *

## § 7104

(a) The Federal Labor Relations Authority is composed of three members, not more than 2 of whom may be adherents of the same political party. No member shall engage in any other business or employment or hold another office or position in the Government of the United States except as otherwise provided by law.

(b) Members of the Authority shall be appointed by the President by and with the advice and consent of the Senate, and may be removed by the President only upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office. The President shall designate one member to serve as Chairman of the Authority. The Chairman is the chief executive and administrative officer of the Authority.

(c) A member of the Authority shall be appointed for a term of 5 years. An individual chosen to fill a vacancy shall be appointed for the unexpired term of the member replaced. The term of any member shall not expire before the earlier of--
(1) the date on which the member's successor takes office, or
(2) the last day of the Congress beginning after the date on which the member's term of office would (but for this paragraph) expire.

1

(d) A vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority.

(e) The Authority shall make an annual report to the President for transmittal to the Congress which shall include information as to the cases it has heard and the decisions it has rendered.

(f)(1) The General Counsel of the Authority shall be appointed by the President, by and with the advice and consent of the Senate, for a term of 5 years. The General Counsel may be removed at any time by the President. The General Counsel shall hold no other office or position in the Government of the United States except as provided by law.
(2) The General Counsel may--
(A) investigate alleged unfair labor practices under this chapter,
(B) file and prosecute complaints under this chapter, and
(C) exercise such other powers of the Authority as the Authority may prescribe.
(3) The General Counsel shall have direct authority over, and responsibility for, all employees in the office of General Counsel, including employees of the General Counsel in the regional offices of the Authority.

## § 7105

a)(1) The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.
(2) The Authority shall, to the extent provided in this chapter and in accordance with regulations prescribed by the Authority--
(A) determine the appropriateness of units for labor organization representation under section 7112 of this title;
(B) supervise or conduct elections to determine whether a labor organization has been selected as an exclusive representative by a majority of the employees in an appropriate unit and otherwise administer the provisions of section 7111 of this title relating to the according of exclusive recognition to labor organizations;
(C) prescribe criteria and resolve issues relating to the granting of national consultation rights under section 7113 of this title;
(D) prescribe criteria and resolve issues relating to determining compelling need for agency rules or regulations under section 7117(b) of this title;
(E) resolves issues relating to the duty to bargain in good faith under section

2

7117(c) of this title;

(F) prescribe criteria relating to the granting of consultation rights with respect to conditions of employment under section 7117(d) of this title;

(G) conduct hearings and resolve complaints of unfair labor practices under section 7118 of this title;

(H) resolve exceptions to arbitrator's awards under section 7122 of this title; and

(I) take such other actions as are necessary and appropriate to effectively administer the provisions of this chapter.

(b) The Authority shall adopt an official seal which shall be judicially noticed.

(c) The principal office of the Authority shall be in or about the District of Columbia, but the Authority may meet and exercise any or all of its powers at any time or place. Except as otherwise expressly provided by law, the Authority may, by one or more of its members or by such agents as it may designate, make any appropriate inquiry necessary to carry out its duties wherever persons subject to this chapter are located. Any member who participates in the inquiry shall not be disqualified from later participating in a decision of the Authority in any case relating to the inquiry.

(d) The Authority shall appoint an Executive Director and such regional directors, administrative law judges under section 3105 of this title, and other individuals as it may from time to time find necessary for the proper performance of its functions. The Authority may delegate to officers and employees appointed under this subsection authority to perform such duties and make such expenditures as may be necessary.

(e)(1) The Authority may delegate to any regional director its authority under this chapter--

(A) to determine whether a group of employees is an appropriate unit;

(B) to conduct investigations and to provide for hearings;

(C) to determine whether a question of representation exists and to direct an election; and

(D) to supervise or conduct secret ballot elections and certify the results thereof.

(2) The Authority may delegate to any administrative law judge appointed under subsection (d) of this section its authority under section 7118 of this title to determine whether any person has engaged in or is engaging in an unfair labor practice.

3

(f) If the Authority delegates any authority to any regional director or administrative law judge to take any action pursuant to subsection (e) of this section, the Authority may, upon application by any interested person filed within 60 days after the date of the action, review such action, but the review shall not, unless specifically ordered by the Authority, operate as a stay of action. The Authority may affirm, modify, or reverse any action reviewed under this subsection. If the Authority does not undertake to grant review of the action under this subsection within 60 days after the later of--

(1) the date of the action; or

(2) the date of the filing of any application under this subsection for review of the action;

the action shall become the action of the Authority at the end of such 60-day period.

(g) In order to carry out its functions under this chapter, the Authority may--

(1) hold hearings;

(2) administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in section 7132 of this title; and

(3) may require an agency or a labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter.

(h) Except as provided in section 518 of title 28, relating to litigation before the Supreme Court, attorneys designated by the Authority may appear for the Authority and represent the Authority in any civil action brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law.

(i) In the exercise of the functions of the Authority under this title, the Authority may request from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or policy directives issued by the Office of Personnel Management in connection with any matter before the Authority.

## § 7106

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency--

4

(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

(2) in accordance with applicable laws--

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from--

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source; and

(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating--

(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

* * *

# § 7113

(a) If, in connection with any agency, no labor organization has been accorded exclusive recognition on an agency basis, a labor organization which is the exclusive representative of a substantial number of the employees of the agency, as determined in accordance with criteria prescribed by the Authority, shall be granted national consultation rights by the agency. National consultation rights shall terminate when the labor organization no longer meets the criteria prescribed by the Authority. Any issue relating to any labor organization's eligibility for, or continuation of, national consultation rights shall be subject to determination by the Authority.

5

(b)(1) Any labor organization having national consultation rights in connection with any agency under subsection (a) of this section shall--
(A) be informed of any substantive change in conditions of employment proposed by the agency, and
(B) be permitted reasonable time to present its views and recommendations regarding the changes.
(2) If any views or recommendations are presented under paragraph (1) of this subsection to an agency by any labor organization--
(A) the agency shall consider the views or recommendations before taking final action on any matter with respect to which the views or recommendations are presented; and
(B) the agency shall provide the labor organization a written statement of the reasons for taking the final action.

(c) Nothing in this section shall be construed to limit the right of any agency or exclusive representative to engage in collective bargaining.

# § 7114

(a)(1) A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.
(2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at--
(A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment; or
(B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if--
(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and
(ii) the employee requests representation.

6

(3) Each agency shall annually inform its employees of their rights under paragraph (2)(B) of this subsection.

(4) Any agency and any exclusive representative in any appropriate unit in the agency, through appropriate representatives, shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement. In addition, the agency and the exclusive representative may determine appropriate techniques, consistent with the provisions of section 7119 of this title, to assist in any negotiation.

(5) The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude an employee from--

(A) being represented by an attorney or other representative, other than the exclusive representative, of the employee's own choosing in any grievance or appeal action; or

(B) exercising grievance or appellate rights established by law, rule, or regulation;

except in the case of grievance or appeal procedures negotiated under this chapter.

(b) The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation--

(1) to approach the negotiations with a sincere resolve to reach a collective bargaining agreement;

(2) to be represented at the negotiations by duly authorized representatives prepared to discuss and negotiate on any condition of employment;

(3) to meet at reasonable times and convenient places as frequently as may be necessary, and to avoid unnecessary delays;

(4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data--

(A) which is normally maintained by the agency in the regular course of business;

(B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and

(C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining; and

(5) if agreement is reached, to execute on the request of any party to the negotiation a written document embodying the agreed terms, and to take such steps as are necessary to implement such agreement.

(c)(1) An agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency.

(2) The head of the agency shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision).

(3) If the head of the agency does not approve or disapprove the agreement within the 30-day period, the agreement shall take effect and shall be binding on the agency and the exclusive representative subject to the provisions of this chapter and any other applicable law, rule, or regulation.

(4) A local agreement subject to a national or other controlling agreement at a higher level shall be approved under the procedures of the controlling agreement or, if none, under regulations prescribed by the agency.

* * *

# § 7116

(a) For the purpose of this chapter, it shall be an unfair labor practice for an agency--

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

(2) to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment;

(3) to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status;

(4) to discipline or otherwise discriminate against an employee because the employee has filed a complaint, affidavit, or petition, or has given any information or testimony under this chapter;

(5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;

(6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter;

(7) to enforce any rule or regulation (other than a rule or regulation implementing section 2302 of this title) which is in conflict with any applicable collective

bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed; or

(8) to otherwise fail or refuse to comply with any provision of this chapter.

(b) For the purpose of this chapter, it shall be an unfair labor practice for a labor organization--

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

(2) to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter;

(3) to coerce, discipline, fine, or attempt to coerce a member of the labor organization as punishment, reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee;

(4) to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

(5) to refuse to consult or negotiate in good faith with an agency as required by this chapter;

(6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter;

(7)(A) to call, or participate in, a strike, work stoppage, or slowdown, or picketing of an agency in a labor-management dispute if such picketing interferes with an agency's operations, or

(B) to condone any activity described in subparagraph (A) of this paragraph by failing to take action to prevent or stop such activity; or

(8) to otherwise fail or refuse to comply with any provision of this chapter.

Nothing in paragraph (7) of this subsection shall result in any informational picketing which does not interfere with an agency's operations being considered as an unfair labor practice.

(c) For the purpose of this chapter it shall be an unfair labor practice for an exclusive representative to deny membership to any employee in the appropriate unit represented by such exclusive representative except for failure--

(1) to meet reasonable occupational standards uniformly required for admission, or

(2) to tender dues uniformly required as a condition of acquiring and retaining

9

membership.

This subsection does not preclude any labor organization from enforcing discipline in accordance with procedures under its constitution or bylaws to the extent consistent with the provisions of this chapter.

(d) Issues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section. Except for matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure, issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures.

(e) The expression of any personal view, argument, opinion or the making of any statement which--
(1) publicizes the fact of a representational election and encourages employees to exercise their right to vote in such election,
(2) corrects the record with respect to any false or misleading statement made by any person, or
(3) informs employees of the Government's policy relating to labor-management relations and representation,

shall not, if the expression contains no threat of reprisal or force or promise of benefit or was not made under coercive conditions, (A) constitute an unfair labor practice under any provision of this chapter, or (B) constitute grounds for the setting aside of any election conducted under any provisions of this chapter.

# § 7117

(a)(1) Subject to paragraph (2) of this subsection, the duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation.
(2) The duty to bargain in good faith shall, to the extent not inconsistent with Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any agency rule or regulation referred to in paragraph (3) of this subsection only if the Authority has determined under subsection (b) of this

section that no compelling need (as determined under regulations prescribed by the Authority) exists for the rule or regulation.

(3) Paragraph (2) of the subsection applies to any rule or regulation issued by any agency or issued by any primary national subdivision of such agency, unless an exclusive representative represents an appropriate unit including not less than a majority of the employees in the issuing agency or primary national subdivision, as the case may be, to whom the rule or regulation is applicable.

(b)(1) In any case of collective bargaining in which an exclusive representative alleges that no compelling need exists for any rule or regulation referred to in subsection (a)(3) of this section which is then in effect and which governs any matter at issue in such collective bargaining, the Authority shall determine under paragraph (2) of this subsection, in accordance with regulations prescribed by the Authority, whether such a compelling need exists.

(2) For the purpose of this section, a compelling need shall be determined not to exist for any rule or regulation only if--

(A) the agency, or primary national subdivision, as the case may be, which issued the rule or regulation informs the Authority in writing that a compelling need for the rule or regulation does not exist; or

(B) the Authority determines that a compelling need for a rule or regulation does not exist.

(3) A hearing may be held, in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall be expedited to the extent practicable and shall not include the General Counsel as a party.

(4) The agency, or primary national subdivision, as the case may be, which issued the rule or regulation shall be a necessary party at any hearing under this subsection.

(c)(1) Except in any case to which subsection (b) of this section applies, if an agency involved in collective bargaining with an exclusive representative alleges that the duty to bargain in good faith does not extend to any matter, the exclusive representative may appeal the allegation to the Authority in accordance with the provisions of this subsection.

(2) The exclusive representative may, on or before the 15th day after the date on which the agency first makes the allegation referred to in paragraph (1) of this subsection, institute an appeal under this subsection by--

(A) filing a petition with the Authority; and

11

(B) furnishing a copy of the petition to the head of the agency.

(3) On or before the 30th day after the date of the receipt by the head of the agency of the copy of the petition under paragraph (2)(B) of this subsection, the agency shall--

(A) file with the Authority a statement--

(i) withdrawing the allegation; or

(ii) setting forth in full its reasons supporting the allegation; and

(B) furnish a copy of such statement to the exclusive representative.

(4) On or before the 15th day after the date of the receipt by the exclusive representative of a copy of a statement under paragraph (3)(B) of this subsection, the exclusive representative shall file with the Authority its response to the statement.

(5) A hearing may be held, in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall not include the General Counsel as a party.

(6) The Authority shall expedite proceedings under this subsection to the extent practicable and shall issue to the exclusive representative and to the agency a written decision on the allegation and specific reasons therefor at the earliest practicable date.


(d)(1) A labor organization which is the exclusive representative of a substantial number of employees, determined in accordance with criteria prescribed by the Authority, shall be granted consultation rights by any agency with respect to any Government-wide rule or regulation issued by the agency effecting any substantive change in any condition of employment. Such consultation rights shall terminate when the labor organization no longer meets the criteria prescribed by the Authority. Any issue relating to a labor organization's eligibility for, or continuation of, such consultation rights shall be subject to determination by the Authority.

(2) A labor organization having consultation rights under paragraph (1) of this subsection shall--

(A) be informed of any substantive change in conditions of employment proposed by the agency, and

(B) shall be permitted reasonable time to present its views and recommendations regarding the changes.

(3) If any views or recommendations are presented under paragraph (2) of this subsection to an agency by any labor organization--

(A) the agency shall consider the views or recommendations before taking final

action on any matter with respect to which the views or recommendations are presented; and

(B) the agency shall provide the labor organization a written statement of the reasons for taking the final action.

## § 7118

(a)(1) If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint.

(2) Any complaint under paragraph (1) of this subsection shall contain a notice--

(A) of the charge;

(B) that a hearing will be held before the Authority (or any member thereof or before an individual employed by the authority and designated for such purpose); and

(C) of the time and place fixed for the hearing.

(3) The labor organization or agency involved shall have the right to file an answer to the original and any amended complaint and to appear in person or otherwise and give testimony at the time and place fixed in the complaint for the hearing.

(4)(A) Except as provided in subparagraph (B) of this paragraph, no complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority.

(B) If the General Counsel determines that the person filing any charge was prevented from filing the charge during the 6-month period referred to in subparagraph (A) of this paragraph by reason of--

(i) any failure of the agency or labor organization against which the charge is made to perform a duty owed to the person, or

(ii) any concealment which prevented discovery of the alleged unfair labor practice during the 6-month period,

the General Counsel may issue a complaint based on the charge if the charge was filed during the 6-month period beginning on the day of the discovery by the person of the alleged unfair labor practice.

13

(5) The General Counsel may prescribe regulations providing for informal methods by which the alleged unfair labor practice may be resolved prior to the issuance of a complaint.

(6) The Authority (or any member thereof or any individual employed by the Authority and designated for such purpose) shall conduct a hearing on the complaint not earlier than 5 days after the date on which the complaint is served. In the discretion of the individual or individuals conducting the hearing, any person involved may be allowed to intervene in the hearing and to present testimony. Any such hearing shall, to the extent practicable, be conducted in accordance with the provisions of subchapter II of chapter 5 of this title, except that the parties shall not be bound by rules of evidence, whether statutory, common law, or adopted by a court. A transcript shall be kept of the hearing. After such a hearing the Authority, in its discretion, may upon notice receive further evidence or hear argument.

(7) If the Authority (or any member thereof or any individual employed by the Authority and designated for such purpose) determines after any hearing on a complaint under paragraph (5) of this subsection that the preponderance of the evidence received demonstrates that the agency or labor organization named in the complaint has engaged in or is engaging in an unfair labor practice, then the individual or individuals conducting the hearing shall state in writing their findings of fact and shall issue and cause to be served on the agency or labor organization an order--

(A) to cease and desist from any such unfair labor practice in which the agency or labor organization is engaged;

(B) requiring the parties to renegotiate a collective bargaining agreement in accordance with the order of the Authority and requiring that the agreement, as amended, be given retroactive effect;

(C) requiring reinstatement of an employee with backpay in accordance with section 5596 of this title; or

(D) including any combination of the actions described in subparagraphs (A) through (C) of this paragraph or such other action as will carry out the purpose of this chapter.

If any such order requires reinstatement of an employee with backpay, backpay may be required of the agency (as provided in section 5596 of this title) or of the labor organization, as the case may be, which is found to have engaged in the unfair labor practice involved.

14

(8) If the individual or individuals conducting the hearing determine that the preponderance of the evidence received fails to demonstrate that the agency or labor organization named in the complaint has engaged in or is engaging in an unfair labor practice, the individual or individuals shall state in writing their findings of fact and shall issue an order dismissing the complaint.

(b) In connection with any matter before the Authority in any proceeding under this section, the Authority may request, in accordance with the provisions of section 7105(i) of this title, from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or other policy directives issued by the Office of Personnel Management.

# § 7119

(a) The Federal Mediation and Conciliation Service shall provide services and assistance to agencies and exclusive representatives in the resolution of negotiation impasses. The Service shall determine under what circumstances and in what manner it shall provide services and assistance.

(b) If voluntary arrangements, including the services of the Federal Mediation and Conciliation Service or any other third-party mediation, fail to resolve a negotiation impasse--
(1) either party may request the Federal Service Impasses Panel to consider the matter, or
(2) the parties may agree to adopt a procedure for binding arbitration of the negotiation impasse, but only if the procedure is approved by the Panel.

(c)(1) The Federal Service Impasses Panel is an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives.
(2) The Panel shall be composed of a Chairman and at least six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations.
(3) Of the original members of the Panel, 2 members shall be appointed for a term of 1 year, 2 members shall be appointed for a term of 3 years, and the Chairman

and the remaining members shall be appointed for a term of 5 years. Thereafter each member shall be appointed for a term of 5 years, except that an individual chosen to fill a vacancy shall be appointed for the unexpired term of the member replaced. Any member of the Panel may be removed by the President.

(4) The Panel may appoint an Executive Director and any other individuals it may from time to time find necessary for the proper performance of its duties. Each member of the Panel who is not an employee (as defined in section 2105 of this title) is entitled to pay at a rate equal to the daily equivalent of the maximum annual rate of basic pay then currently paid under the General Schedule for each day he is engaged in the performance of official business of the Panel, including travel time, and is entitled to travel expenses as provided under section 5703 of this title.

(5)(A) The Panel or its designee shall promptly investigate any impasse presented to it under subsection (b) of this section. The Panel shall consider the impasse and shall either--

(i) recommend to the parties procedures for the resolution of the impasse; or

(ii) assist the parties in resolving the impasse through whatever methods and procedures, including factfinding and recommendations, it may consider appropriate to accomplish the purpose of this section.

(B) If the parties do not arrive at a settlement after assistance by the Panel under subparagraph (A) of this paragraph, the Panel may--

(i) hold hearings;

(ii) administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in section 7132 of this title; and

(iii) take whatever action is necessary and not inconsistent with this chapter to resolve the impasse.

(C) Notice of any final action of the Panel under this section shall be promptly served upon the parties, and the action shall be binding on such parties during the term of the agreement, unless the parties agree otherwise.

* * *

## § 7121

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures

16

for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

(b)(1) Any negotiated grievance procedure referred to in subsection (a) of this section shall--

(A) be fair and simple,

(B) provide for expeditious processing, and

(C) include procedures that--

(i) assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;

(ii) assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and

(iii) provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.

(2)(A) The provisions of a negotiated grievance procedure providing for binding arbitration in accordance with paragraph (1)(C)(iii) shall, if or to the extent that an alleged prohibited personnel practice is involved, allow the arbitrator to order--

(i) a stay of any personnel action in a manner similar to the manner described in section 1221(c) with respect to the Merit Systems Protection Board; and

(ii) the taking, by an agency, of any disciplinary action identified under section 1215(a)(3) that is otherwise within the authority of such agency to take.

(B) Any employee who is the subject of any disciplinary action ordered under subparagraph (A)(ii) may appeal such action to the same extent and in the same manner as if the agency had taken the disciplinary action absent arbitration.

(c) The preceding subsections of this section shall not apply with respect to any grievance concerning--

(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

(2) retirement, life insurance, or health insurance;

(3) a suspension or removal under section 7532 of this title;

(4) any examination, certification, or appointment; or

(5) the classification of any position which does not result in the reduction in grade or pay of an employee.

17

(d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

(e)(1) Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise a matter either under the applicable appellate procedures or under the negotiated grievance procedure at such time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first.
(2) In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, an arbitrator shall be governed by section 7701(c)(1) of this title, as applicable.

(f) In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section,

section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures.

(g)(1) This subsection applies with respect to a prohibited personnel practice other than a prohibited personnel practice to which subsection (d) applies.

(2) An aggrieved employee affected by a prohibited personnel practice described in paragraph (1) may elect not more than one of the remedies described in paragraph (3) with respect thereto. For purposes of the preceding sentence, a determination as to whether a particular remedy has been elected shall be made as set forth under paragraph (4).

(3) The remedies described in this paragraph are as follows:

(A) An appeal to the Merit Systems Protection Board under section 7701.

(B) A negotiated grievance procedure under this section.

(C) Procedures for seeking corrective action under subchapters II and III of chapter 12.

(4) For the purpose of this subsection, a person shall be considered to have elected--

(A) the remedy described in paragraph (3)(A) if such person has timely filed a notice of appeal under the applicable appellate procedures;

(B) the remedy described in paragraph (3)(B) if such person has timely filed a grievance in writing, in accordance with the provisions of the parties' negotiated procedure; or

(C) the remedy described in paragraph (3)(C) if such person has sought corrective action from the Office of Special Counsel by making an allegation under section 1214(a)(1).

(h) Settlements and awards under this chapter shall be subject to the limitations in section 5596(b)(4) of this title.

## § 7122

(a) Either party to arbitration under this chapter may file with the Authority an exception to any arbitrator's award pursuant to the arbitration (other than an award relating to a matter described in section 7121(f) of this title). If upon review the Authority finds that the award is deficient--
(1) because it is contrary to any law, rule, or regulation; or
(2) on other grounds similar to those applied by Federal courts in private sector labor-management relations;

the Authority may take such action and make such recommendations concerning the award as it considers necessary, consistent with applicable laws, rules, or regulations.

(b) If no exception to an arbitrator's award is filed under subsection (a) of this section during the 30-day period beginning on the date the award is served on the party, the award shall be final and binding. An agency shall take the actions required by an arbitrator's final award. The award may include the payment of backpay (as provided in section 5596 of this title).

## § 7123

(a) Any person aggrieved by any final order of the Authority other than an order under--
(1) section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title, or
(2) section 7112 of this title (involving an appropriate unit determination),
may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.

(b) The Authority may petition any appropriate United States court of appeals for the enforcement of any order of the Authority and for appropriate temporary relief or restraining order.

(c) Upon the filing of a petition under subsection (a) of this section for judicial

review or under subsection (b) of this section for enforcement, the Authority shall file in the court the record in the proceedings, as provided in section 2112 of title 28. Upon the filing of the petition, the court shall cause notice thereof to be served to the parties involved, and thereupon shall have jurisdiction of the proceeding and of the question determined therein and may grant any temporary relief (including a temporary restraining order) it considers just and proper, and may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Authority. The filing of a petition under subsection (a) or (b) of this section shall not operate as a stay of the Authority's order unless the court specifically orders the stay. Review of the Authority's order shall be on the record in accordance with section 706 of this title. No objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances. The findings of the Authority with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any person applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there were reasonable grounds for the failure to adduce the evidence in the hearing before the Authority, or its designee, the court may order the additional evidence to be taken before the Authority, or its designee, and to be made a part of the record. The Authority may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed. The Authority shall file its modified or new findings, which, with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The Authority shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with the court, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the judgment and decree shall be subject to review by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

(d) The Authority may, upon issuance of a complaint as provided in section 7118 of this title charging that any person has engaged in or is engaging in an unfair labor practice, petition any United States district court within any district in which the unfair labor practice in question is alleged to have occurred or in which such person resides or transacts business for appropriate temporary relief (including a restraining order). Upon the filing of the petition, the court shall cause notice thereof to be served upon the person, and thereupon shall have jurisdiction to grant

21

any temporary relief (including a temporary restraining order) it considers just and proper. A court shall not grant any temporary relief under this section if it would interfere with the ability of the agency to carry out its essential functions or if the Authority fails to establish probable cause that an unfair labor practice is being committed.